UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JUAN RAMOS RODRIGUEZ,

      Plaintiff,

v.                                                     Case No. 8:25-cv-00016-NHA

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## <u>ORDER</u>

Plaintiff challenges the August 30, 2024 denial of his claim for Disability Insurance Benefits (DIB). He argues that: (1) the Administrative Law Judge (ALJ) erred in finding that Plaintiff had severe impairments in both shoulders but was limited in only the use of his left shoulder (Doc. 23 p. 7); (2) that the ALJ's finding of Plaintiff's ability to perform certain jobs was not based on substantial evidence, because it relied on the Vocational Expert's opinion of a hypothetical person with a different residual capacity than Plaintiff's (Doc. 23 pp. 7-8); (3) that the ALJ erred in finding that Plaintiff required no protection from light exposure or accommodation for absenteeism, despite Plaintiff's testimony that light sometimes triggered his migraine headaches which caused him to miss work (Doc. 23 pp. 9-11); and, (4) that the ALJ failed to address the alleged contradiction between the ALJ's finding that Plaintiff

could perform only simple tasks and the Vocational Expert's testimony that Plaintiff could perform work that required level-two reasoning (Doc. 23 pp. 11-14).

After carefully reviewing the parties' briefs and the administrative record, I find that Plaintiff's second and third arguments require remand.

## I.    Background

Plaintiff was born in 1977 and has a high school education. R. 50-51. He has worked as a mail handler, machine assembler, and mechanic, but has not worked since 2017. R. 51-53, 397.  Plaintiff claims he became disabled on July 29, 2017. R. 314. The ALJ found that Plaintiff was last insured on December 31, 2022. R. 22. Thus, Plaintiff was required to prove he became disabled prior to that date. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For DIB claims, a claimant is eligible for benefits where []he demonstrates disability on or before the last date for which []he were insured.") (citing 42 U.S.C. § 423).

### a.  Procedural History

Plaintiff applied for DIB on October 27, 2021. R. 325. He claimed that he could not work because he suffered from Post-Traumatic Stress Disorder (PTSD), major depressive disorder, left shoulder strain, degenerative arthritis, migraines, erectile dysfunction, gastroesophageal reflux disease, tinnitus,

2

nasal allergy, and skin rashes. R. 408.  He did not claim any right shoulder impairment.

Plaintiff's DIB claim was initially denied on August 19, 2022 (R. 160) and denied again upon reconsideration on October 26, 2023 (R. 166). On December 22, 2023, Plaintiff requested a hearing before an ALJ. R. 169. At the telephonic hearing, held on May 16, 2024 (R. 46), Plaintiff was represented by counsel and assisted by an interpreter.[1]  R. 47. Plaintiff testified at the hearing. R. 50. A qualified and disinterested Vocational Expert (VE) also testified. R. 70.

On August 30, 2024, the ALJ issued her post-hearing decision, in which she concluded that Plaintiff was not disabled because he could perform jobs that existed in significant numbers in the national economy. R. 22-35.

The ALJ's decision became final on November 1, 2024. R. 1. Plaintiff timely appealed the decision to this Court on January 3, 2026.[2] Compl., Doc. 1. Plaintiff filed a brief challenging Defendant's decision (Doc. 23), Defendant responded in opposition (Doc. 26), and Plaintiff filed a reply (Doc. 27). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

---

[1] The hearing was conducted in English. Plaintiff speaks and understands English, but is a native Spanish speaker, so a Spanish interpreter attended the hearing to ensure that Plaintiff could understand and communicate all relevant information. *See* R. 46, 58.

[2] Plaintiff initiated this case over 60 days after the Appeals Counsel *sent* their letter denying review on November 1, but the letter states that Plaintiff had 60 days to file a civil action when Plaintiff *received* the letter, which is assumed to be 5 days after it is sent. R. 2.

This appeal requires review of the medical evidence relating only to Plaintiff's shoulders and migraines. As stated above, the relevant period spans from July 28, 2017 (when Plaintiff claims he became disabled) and December 31, 2022 (when Plaintiff was last insured).

### b. Evidence of Shoulder Impairments

During the period under review, Plaintiff's medical records consistently document Plaintiff's complaints of, and treatment for, shoulder pain, almost exclusively in his left shoulder, with only one complaint of pain in his right shoulder.

In December of 2017, Dr. Luis Gonzalez-Martinez conducted an in-person examination of Plaintiff while Plaintiff was applying for an increase in his VA benefits. R. 1207. Plaintiff complained to Dr. Gonzalez-Martinez of "occasional left shoulder pain which gets worse when doing repeated movements" and "left arm muscle cramps and numbness sensation, [especially] when driving." R. 1207. In a report written after that examination, Dr. Gonzalez-Martinez noted that Plaintiff had been diagnosed with "tendonitis and muscle cramps in the left arm," and added a diagnosis of "left shoulder strain with tendonitis." R. 1207. Dr. Gonzalez-Martinez found that Plaintiff had an "abnormal" range of motion in his left shoulder, but that it did not result in any "functional loss." R. 1208. He also noted that Plaintiff's right shoulder was "uninjured/normal." R. 1212.

A similar report completed by VA Dr. Gerardo Sanchez-Jimenez, after an in-person examination of Plaintiff's shoulder on January 11, 2019, also noted Plaintiff's "left shoulder strain" diagnosis. R. 1183. That report stated that Plaintiff complained of continued "shoulder pain which is accentuated with left arm movements which involve the left shoulder" and reported "decreased [range of motion] and decreased strength in the left shoulder." R. 1183-84. Dr. Sanchez-Jimenez recorded that Plaintiff's left shoulder strain caused him pain when lifting his left arm or holding onto objects with his left hand, but that "the opposing right shoulder is clinically undamaged." R. 1189.

A physical exam report completed in February 2020 stated that Plaintiff's left shoulder pain was "improving" and that he had full range of motion in both shoulders with some discomfort and tenderness in his left. R. 1022-24. A radiology report from the same visit noted that an x-ray of his left shoulder (from three angles) showed "mild widening of the acromioclavicular joint." R. 1152. The doctor noted he "suspected postsurgical changes at the acromioclavicular joint," but "otherwise, no significant abnormality." R. 1152.

The record does not contain evidence of any doctor diagnosing Plaintiff with "degenerative joint disease of the bilateral shoulders." However, in May 2022, Dr. Lanny Chuang, doctor of osteopathic medicine, diagnosed Plaintiff with degenerative joint disease of the *left* shoulder based on an x-ray of the same. R. 1991. The x-ray showed that Plaintiff's left shoulder was "intact in

good alignment without significant or acute bony abnormality seen," but indicated that Plaintiff had "very mild [degenerative joint disease]" in his left shoulder. R. 1991. Plaintiff's right shoulder was not examined.

As for Plaintiff's right arm, one note from a June 13, 2022 acupuncture treatment session stated that Plaintiff complained of "nerve pain" and that his "right arm and forearm have been locking up and it gets stuck in that position for about 15 seconds." R. 1998. The "assessment" section of the acupuncture treatment note stated that Plaintiff was experiencing "right shoulder pain which is severely limiting [range of motion]." R. 1998.

However, on August 15, 2022, just before the initial denial of Plaintiff's DIB application, Plaintiff underwent a consultative disability examination by Dr. Charles Lebowitz. R. 2045. During that examination, Plaintiff's only upper extremity complaint was "left shoulder pain." R. 2045. On a "range of motion report form" incorporated into the examination report, Dr. Lebowitz noted some limitations to Plaintiff's left shoulder's range of motion but none for his right shoulder. R. 2049.

In 2022, Dr. Moses Izuegbu, M.D. made similar findings after reviewing the medical evidence. R. 131. Specifically, Dr. Izuegbu determined that Plaintiff had a severe impairment of the joints, identified only as "other and unspecified arthropathies" of the "musculoskeletal system." R. 124. Dr. Izuegbo

recommended a residual functional capacity (RFC)[3] that limited Plaintiff to occasionally lifting up to 20 pounds and frequently lifting up to 10 pounds, but that included no limitations on pushing or pulling with either arm, or on reaching or fingering. R. 125-26. In 2023, Dr. P.S. Krishnamurthy made the same RFC recommendations following his review of the records. R. 137-40.

At the 2024 hearing before the ALJ, Plaintiff testified that he experienced pain in his left shoulder and left-hand fingers. R. 56. Specifically, Plaintiff testified that he felt sharp pain when leaning on his left shoulder, and that he sometimes felt a tingling and burning sensation throughout his left arm and fingers. R. 57. When asked by the ALJ how his left shoulder pain limited his range of motion, Plaintiff testified that he could not lift his arm all the way up or "hold anything for too long with [his] hands." R. 57. Plaintiff stated that his shoulder and arm pain made it difficult to use his left hand to hold his phone, to bathe himself, or to use a screwdriver. R. 58-59. Plaintiff also testified that he could lift or carry "barely any" weight with his left arm, but that he could carry about eight pounds with his right arm. R. 67-68.

---

[3] A claimant's "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may affect his or her capacity to do work-related physical and mental activities." *Malak v. Commr. of Soc. Sec.*, 131 F.4th 1280, 1286 (11th Cir. 2025) (quoting SSR 96-8P, 1996 WL 374184, at *2).

The VE, Dr. John Black, also testified at Plaintiff's 2024 hearing. R. 70. Dr. Black holds a doctorate in education and a master's degree in rehabilitation psychology. R. 609. He has testified as a Certified VE in over 13,000 SSA hearings since 2011. R. 609. At the hearing, Plaintiff's counsel stated that he had no objection to Dr. Black testifying as a VE. R. 71.

The ALJ posed a hypothetical question to Dr. Black, asking what work a person with Plaintiff's age, education, and work experience could perform, assuming they were limited to only frequently:

- "pushing and pulling with the *right* upper extremity" (R. 72) (emphasis added);

- "reaching with the left upper extremity" (R. 73); and,

- "handling and fingering with the left hand" (R. 73).

Dr. Black testified that such a person could perform the jobs of routing clerk, retail marker, and office helper. R. 73-74. The ALJ ultimately found that Plaintiff had the limitations of those posited in the hypothetical, except that the ALJ found Plaintiff could only "frequently pull with the *left* upper extremity," (a limitation not posited in the hypothetical to the VE) and included no limitations for the right upper extremity (despite the one posited in the hypothetical). R. 27 (emphasis added). Nonetheless, relying on the VE's testimony, the ALJ concluded that Plaintiff could perform the three jobs the VE identified. R. 34.

c.  Evidence Regarding Plaintiff's Migraines and Headaches

Plaintiff's medical records show that he consistently reported, and was treated for, migraine headaches, during the review period.

When Plaintiff was applying for an increase in his VA benefits, in November 2017, Dr. Joseph Campos-Salgado examined Plaintiff and completed a "Headaches Disability Benefits Questionnaire." R. 1235-37. Dr. Campos-Salgado noted that Plaintiff had already been diagnosed with a migraine condition that began during his military service. R. 1236. Plaintiff reported to the doctor that he was experiencing "migraine attacks at least 4 times a month that [required] complete bed rest," and that the headaches caused nausea, sensitivity to light, sensitivity to sound, changes in vision, and other unspecified "sensory changes." R. 1236. However, Dr. Campos-Salgado concluded that Plaintiff had "prostrating" migraine attacks only once per month, and that he did not have "very prostrating and prolonged attacks" that would cause "severe economic instability." R. 1236. Dr. Campos-Salgado did not order or review any diagnostic testing for Plaintiff's headaches, and he ultimately opined that Plaintiff's migraines or headaches did not impact his ability to work. R. 1237.

Dr. Campos-Salgado also evaluated Plaintiff and completed a similar questionnaire in November 2018. R. 1194-96. He noted that Plaintiff then reported that his headaches had gotten worse, and that Plaintiff suffered from

"migraine attacks" three times a week, with "severe attacks" once a month that could last several days. Doc. 1194-95. Dr. Campos-Silgado noted the same symptoms as those in 2017, and this time concluded that Plaintiff's migraines "interfere with his ability to sustain any type of employment." R. 1195.

During a VA clinic visit in February 2020, Plaintiff complained of headaches that had been "ongoing for many years," since at least 2015. R. 1020. Plaintiff reported that the "character" of the headaches was "relatively unchanged," but that the frequency had "somewhat increased." R. 1020. Dr. Eric Catlin noted that the headaches were accompanied by sound sensitivity and mild sensitivity to light. R. 1020. However, Dr. Catlin noted that Plaintiff's migraines were "maintained reasonably well" with the use of Topamax and Sumatriptan, two medications prescribed to prevent and treat migraines. R. 1020.

In a "Headache Questionnaire" completed by Plaintiff in November 2021 as part of his DIB application process, Plaintiff reported that he had been getting migraines since 2010. R. 434. He reported that he suffered "practically daily" from headaches, but that he had what he would consider "migraines" about once a week. R. 434. Plaintiff wrote that his migraines could be triggered by physical pain, stress, sleep deprivation, or by light or sound. R. 434. Plaintiff reported that, while his headaches lasted between 30 minutes and several hours, his migraines could last for many hours or even days. R. 435. He further

10

reported that he had been prescribed two medications for his migraines within the past year, and that he had never been to the emergency room for a headache or migraine. R. 435.

At an April 2022 primary care visit, which focused mainly on Plaintiff's left shoulder and right knee pain, the doctor noted that Plaintiff's "migraine headaches [are] better controlled[,] only 1-2 a month now." R. 1944. The only treatment recommended for Plaintiff's migraines during that visit was continued use of his two prescription medications. R. 1948.

Also in 2022, Dr. Lebowitz concluded in his consultative disability examination of Plaintiff that his migraines had "been reduced to about 1-2 times per month." R. 2047.

Dr. Izuegbo's 2022 review of the medical records prompted him to recommend an RFC requiring Plaintiff to "avoid concentrated exposure" to sound, citing migraines as on reason for this limitation. R. 126-27. In 2023, Dr. Krishnamurthy made the same recommendation. R. 138-39. Neither doctor recommended that Plaintiff's exposure to light be limited. *See* R. 126-27, 138-39.

At Plaintiff's 2024 hearing before the ALJ, he testified that his migraine frequency varied by month, but that he generally had "eight or ten migraines per month." R. 63. He also said they lasted for "eight or ten hours." R. 63. Plaintiff testified that his migraines could be triggered by light, sound, odors,

or stress, and that he did not believe that he could do any work while experiencing a migraine. R. 63-64. Plaintiff's attorney asked Plaintiff whether anything helped, to which Plaintiff responded: "Well I normally take my medication, try and cover the eyes, try to make the room as quiet as possible and just go to sleep." R. 64. Plaintiff also testified that, toward the end of his time working, his migraines would cause him to miss up to eight days of work per month. R. 65. Plaintiff's attorney asked him whether he would presently "have serious difficulty getting to work regularly" and whether it would be "seriously troublesome to stay at work for a full day," and Plaintiff answered "yes" to both questions. R. 65-66.

d.  The ALJ's Decision

In reaching her decision to deny Plaintiff's request for DIB, the ALJ used the Social Security Regulations' five-step process, *see* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v), and found:

1) Plaintiff had not engaged in substantial gainful activity between his alleged disability onset date of July 28, 2017, and the date he was last ensured, December 31, 2022. R. 24.

2) Plaintiff had eight severe impairments: "osteoarthritis of the bilateral knees, *degenerative joint disease of the bilateral shoulders*, degenerative disc disease of the cervical and lumbar spine, *migraine headaches*,

12

obesity, affective disorder, anxiety disorder and posttraumatic stress disorder." R. 24-25 (emphasis added).

3) Plaintiff did not have any impairment or combination of impairments which met or medically equaled any of the per se disabling impairments identified in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 25.

4) Plaintiff had no relevant past work. R. 33. Plaintiff's RFC (again, the "assessment of the extent to which an individual's medically determinable impairment(s) . . . may affect his or her capacity to do work-related physical and mental activities," *Malak*, 131 F.4th at 1286) allowed Plaintiff to perform light, unskilled work with certain additional limitations. R. 27. Specifically, he was limited to *frequently pushing and pulling with the left upper extremity, frequently reaching with the left upper extremity, and frequently handling and fingering with the left hand.* The RFC also limited Plaintiff to frequently pushing and pulling with the lower extremities. Further, Plaintiff could only occasionally engage in "postural activities," and could never climb ladders or crouch. Plaintiff's RFC limited him to *no more than occasional exposure to* extreme cold, humidity, unprotected heights, moving machinery, and *atmospheric irritants such as dust, odors fumes and gasses, and he could never be exposed to vibration or more than moderate noise intensity.* Also, *Plaintiff could "understand [and] remember simple and detailed*

13

*instructions and complete simple, routine, repetitive tasks.*" Finally, Plaintiff could interact no more than occasionally with the general public and could endure no more than occasional changes to the nature and setting of his work. R. 27.

5) Considering Plaintiff's RFC as well as his age, education, and experience, Plaintiff could perform "work that existed in substantial numbers in the national economy." R. 33. Specifically, Plaintiff could perform the jobs of routing clerk, retail marker, and office helper. R. 34.

Based on her finding that Plaintiff could perform work that existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. R. 34.

## II.    Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such

14

evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ, even if the Court finds the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for her decision with enough clarity to enable the Court to conduct meaningful review of the standards she employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

In making its decision, the Court must review the entire record. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

15

### III.   Analysis

Plaintiff argues that four errors warrant reversal of the Commissioner's decision. I consider each argument in turn, and find that two errors necessitate remand.

   a. <u>The ALJ did not commit reversible error in omitting right arm limitations from the RFC.</u>

Plaintiff argues that, because the ALJ found Plaintiff had a severe impairment impacting the "bilateral shoulders," it was error to omit from Plaintiff's RFC any limitation relating to Plaintiff's right shoulder. Doc. 23 p. 7.

The ALJ found in her Step Two analysis that Plaintiff had a severe impairment of "degenerative joint disease of the bilateral shoulders." R. 24. The ALJ did not cite to the record to support this conclusion. *See* R. 24-25, 28. However, in a later reference to Plaintiff's "very mild degenerative joint disease," the ALJ cited the May 2022 x-ray of Plaintiff's left shoulder and corresponding diagnosis of degenerative joint disease of the left shoulder. R. 29.

Nevertheless, in concluding that Plaintiff's "degenerative joint disease of the bilateral shoulders" was a severe impairment, the ALJ acknowledged this meant the impairment "caused more than minimal limitations in the claimant's ability to perform the basic work-related activities." R. 25.

However, at Step Four, when the ALJ determined Plaintiff's RFC—his "remaining ability to do work despite his impairments,'" *Schink v. Commr. of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019)—the ALJ did not include any limitations specifically related to Plaintiff's right upper extremity. Rather, she determined that Plaintiff was limited to only "frequently push[ing] and pull[ing] with the left upper extremity," "frequent[ly] reach[ing] with the left upper extremity," and "frequently handl[ing] and finger[ing] with the left hand." R. 27.

On appeal, Plaintiff claims these findings were inconsistent—that Plaintiff had a severe impairment of "degenerative joint disease of the *bilateral* shoulders" (i.e., of both shoulders), and, in contrast, that he was limited only in the use of his *left* shoulder. Doc. 23 p. 7. Plaintiff does not cite evidence demonstrating any right shoulder limitation. Rather, he clarifies the argument "is not a question of the evidence but rather of the ALJ's finding." Doc. 27 p. 2. "Since the ALJ found a severe impairment of the right upper extremity," Plaintiff argues, "then the RFC must contain some limitation to account for that severe impairment." *Id.* p. 3.

As to the Step Two finding, given that no party suggests that Plaintiff had a severe impairment in his right shoulder and given that the record reveals only discussion of degenerative joint disease of the left shoulder (*see* R. 1990-91), the ALJ's finding as to the right shoulder impairment appears

17

unsupported by substantial evidence. Of course, as an *overestimation* of Plaintiff's impairments, this error would be harmless.

And, considering the lack of evidence in the record that Plaintiff was ever diagnosed or treated for degenerative joint disease in his right shoulder, the ALJ's omission from the RFC of any right shoulder limitation is supported by substantial evidence.

To the extent Plaintiff argues that the Court must remand the case so that the ALJ can correct inconsistency between a "bilateral" shoulder impairment and an RFC with no right arm restrictions, I find the error is harmless. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Plaintiff would require the Court to reverse the ALJ's decision based on her failure to consider a limitation that Plaintiff himself does not to claim to have. A remand in such circumstances would serve neither the Court nor Plaintiff. *See Flowers v. Commr., Soc. Sec. Administration*, 97 F.4th 1300 (11th Cir. 2024) (declining to remand because a Social Security plaintiff had "failed to show that his argument would make any difference to his application for disability benefits."). Because remand would be futile on this basis, I decline to order it.

18

b. The ALJ's finding that Plaintiff could perform certain work is unsupported by substantial evidence, because the hypothetical posed to the VE on which the ALJ relied did not account for every aspect of Plaintiff's RFC.

Next, Plaintiff asserts the ALJ's finding that Plaintiff could perform certain jobs was unsupported by substantial evidence, because it relied on the VE's discussion of a hypothetical person without one of the left-arm limitations included in Plaintiff's RFC. Doc. 23 pp. 7-8. This error requires remand.

If an ALJ determines at Step Four that the claimant cannot perform his past relevant work, the Commissioner has the burden "to show the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). An ALJ may meet this burden by asking a VE about the work available to a hypothetical person with an RFC "which comprises all of the claimant's impairments," and then relying on the VE's testimony to find that Plaintiff is eligible for a significant number of jobs in the national economy. *Winschel*, 631 F.3d at 1180.

At Plaintiff's 2024 hearing, the ALJ asked the VE about the work available to a hypothetical person with reaching and handling limitations— but no pushing and pulling limitations—for left upper extremity and hand. R. 72-73. The hypothetical person also had a right extremity limitation and had other non-arm-related limitations. R. 72-73. In response to the hypothetical,

19

the VE testified that a person with those limitations could work as a routing clerk, retail marker, and office helper. R. 73-74.

The ALJ ultimately found that Plaintiff had a similar RFC to the hypothetical person posed to the VE. However, unlike the hypothetical person posed to the VE, the ALJ found that Plaintiff was also limited to only "frequently push[ing] and pull[ing] with the *left* upper extremity."[4] R. 27 (emphasis added). The ALJ then concluded that, "based on the testimony of the vocational expert" (about the hypothetical person with different limitations), Plaintiff could work as a routing clerk, retail marker, and office helper. R. 34. Plaintiff objects to the inconsistency between the hypothetical and Plaintiff's RFC.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart,* 284 F.3d 1219, 1277 (11th Cir. 2002); *see also Samuels v. Acting Commr. of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020) ("In order for the VE's testimony to constitute substantial evidence, 'the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'") (quoting *Winschel*, 631 F.3d at 1181).

---

[4] Additionally, the ALJ omitted from the RFC a limitation of the hypothetical person: the ability to only frequently push and pull with the *right* upper extremity.

Here, as Plaintiff notes, the VE was never asked to consider someone who, in addition to the other limitations associated with Plaintiff's left hand and upper extremity, was also limited to only frequent pushing and pulling with the left upper extremity. Doc. 23 p. 8. Nor is it immediately obvious that such a limitation on the left side would have an equivalent impact as one on the right side, given the additional limitations associated with Plaintiff's left side. Doc. 23 p. 8.  Thus, the ALJ's conclusion that Plaintiff could perform certain jobs was based on the VE's testimony about a hypothetical claimant with an RFC that differed from Plaintiff's in a significant, if subtle, way.[5]

In other cases, Defendant has attempted to defend seemingly minor omissions in an ALJ's hypothetical by claiming the omissions were harmless, and that the reviewing courts could conclude, based on their own review of the job descriptions, that including the correct limitations would not have changed the VEs' testimony. In *Dial v. Commissioner*, the Eleventh Circuit rejected that argument:

> Nonetheless, the district court found, and the Commissioner contends, that this error was harmless because, according to the job descriptions contained in the Dictionary of Occupational Titles ("DOT"), [the claimant's] past relevant work and other jobs in the regional economy would not require him to perform duties inconsistent with his employment limitations. However, while the ALJ could have chosen to rely on the DOT, he instead relied only on the testimony of the VE, who

---

[5] Defendant's brief does not address this concern, but instead focuses exclusively on Plaintiff's failure to show that he has any right arm limitations.

was not instructed on all of [the claimant's] limitations. Thus, we cannot say that the ALJ's error was harmless.

403 Fed. App'x. 420, 421 (11th Cir. 2010) (unpublished).

Here, like in *Dial*, the ALJ explicitly stated that she relied on the VE's testimony "to determine the extent to which [Plaintiff's] limitations erode the unskilled light occupational base," and ultimately concluded that Plaintiff could perform other jobs available in the national economy "based on the testimony of the vocational expert." R. 34; *see Dial*, 403 Fed. App'x. at 421 ("[T]he ALJ relied exclusively on the testimony of a vocational expert."). The ALJ did not directly cite the DOT as a basis for her conclusion, nor did she indicate that she had performed any independent analysis to determine that Plaintiff could work the identified jobs.[6]

Ultimately, reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*,

---

[6] The ALJ added that she "determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles except the DOT does not address the frequency of change [and] the definition of unskilled/simple." R. 34. But this statement does not imply that that ALJ independently consulted the DOT and concluded that the job descriptions conformed to her own RFC determination, in addition to conforming the slightly different hypothetical question posed to the VE. *See Alvesteffer v. Colvin*, 2016 WL 4870492, at *5 n. 3 (M.D. Fla. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 4870234 (M.D. Fla. Sept. 13, 2016) ("The ALJ noted that the VE's testimony was consistent with the DOT, but he did not rely on the DOT for decision. Rather, the ALJ's decision rested on the VE's testimony, and that testimony may have been given on an incomplete hypothetical.").

631 F.3d at 1178 (cleaned up). And, reviewing courts will "decline to affirm simply because some rationale might have supported the ALJ's decision." *Id.* at 1179 (quoting *Owens*, 748 F.2d at 1516).

I find that the ALJ's conclusion (that Plaintiff could perform certain jobs) was not supported by substantial evidence, because it relied on the VE's answer to a question about a hypothetical person with different limitations than Plaintiff. For this reason, the case must be remanded.

    c.  <u>The ALJ's failure to explain her omission of light-exposure limitations from Plaintiff's RFC also warrants reversal.</u>

Next, Plaintiff argues that the ALJ failed to explain why she omitted from Plaintiff's RFC, any "limitation for the [migraine] trigger of light" and any "limitation for the absenteeism that would be caused by his migraine headaches," despite Plaintiff's claim that light triggered his migraines which in turn caused his significant absenteeism. Doc. 23 pp. 9-11.

The ALJ found that Plaintiff had a severe impairment of migraine headaches. R. 24. She included in the RFC the following migraine-related limitations:

- No more than occasional exposure to extreme cold or humidity;

- No more than occasional exposure to atmospheric irritants such as dust, odors, or fumes;

- No exposure to vibration;

23

- No exposure to more than moderate noise intensity.

R. 27.

However, Plaintiff had also claimed that light triggered his migraines and that his migraines caused him to miss substantial amounts of work. As to absenteeism, the record shows that, in 2018, Dr. Campos-Salgado noted that Plaintiff reported suffering from "migraine attacks" three times a week, with "severe attacks" once a month that could last several days. R. 1194-95. At an April 2022 primary care visit, the doctor noted that Plaintiff had "only 1-2 a month now." R. 1944. However, at the hearing before the ALJ, Plaintiff testified that, toward the end of his time working, his migraines would cause him to miss up to eight days of work per month. R. 65.

As to Plaintiff's claim that light caused his migraines, at the hearing before the ALJ, Plaintiff's attorney asked, "Are there any things that trigger your migraines?" to which Plaintiff responded: "Like light, sound sometimes, sometimes strong odor." R. 63. This was consistent with Plaintiff's 2021 answers to a "Headache Questionnaire" in which he identified "light" as a "cause" of his headaches. R. 434.

"Where proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor to the Secretary's decision, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific

24

credibility finding." *Raper v. Comm'r of Soc. Sec.,* 89 F.4th 1261, 1277 (11th Cir. 2024*), cert. denied sub nom. Raper v. O'Malley*, 145 S. Ct. 984 (2024) (cleaned up). For an ALJ's credibility determination to be supported by substantial evidence, the determination must be "clearly articulated" and reflect that "the ALJ considered the claimant's medical condition as a whole." *Id.*; *see also Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) ("If [subjective] complaints are rejected, the reasons should be expressed.").

Plaintiff first argues that the ALJ erred by omitting from his RFC a limitation for absenteeism. But the ALJ explicitly weighed and rejected Plaintiff's claim that his migraines caused such substantial absenteeism. The ALJ noted Plaintiff's hearing testimony that "anxiety symptoms and headaches [] interfere with his ability to work and function throughout the day," (R. 28), and she further noted Dr. Campos Salgado's 2018 migraine evaluation, which indicated that Plaintiff "had not been working due to headaches and depression" (R. 29 (citing R. 1194 as "5F/196")). The ALJ weighed this evidence against recent medical records, noting that Plaintiff reported "better migraine headache control with only 1-2 per month" during an April 2022 primary care visit. R. 29 (citing R. 1944 as "13F/16"). The ALJ also observed that, in recent years, his headaches had been "maintained reasonably well with medication." R. 29.

Thus, the ALJ explicitly discussed Plaintiff's testimony that he would miss work because of his migraines (R. 28) and cited medical evidence suggesting that his ability to regularly work was impaired by his migraines (R. 29), but concluded, based on evidence in the record, that Plaintiff's migraine condition had improved and was being managed. This conclusion, combined with the ALJ's broader finding that Plaintiff's alleged "limiting effects" from his symptoms were "not entirely consistent" with the record (R. 28) amounts to an "implication"  that is "so clear as to amount to a specific credibility finding" that Plaintiff's testimony about ongoing absenteeism was not credible. *See Raper*, 89 F.4th at 1277. And, the medical records do, in fact, suggest Plaintiff's condition had improved that that moderate medical treatment managed the condition.  *See Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 677 (11th Cir. 2020) (unpublished) ("[C]onservative treatment can support discrediting subjective symptoms."); *see also Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that substantial evidence supported the ALJ's decision in part because the claimant's to-date treatments were "conservative in nature"). Thus, the ALJ's decision to exclude absenteeism from the RFC was

procedurally sound and supported by "more than a scintilla" of evidence. *See Winschel*, 631 F.3d at 1178.[7]

In contrast, the ALJ did not specifically address Plaintiff's claim that light could trigger his migraines. The ALJ referenced Dr. Izuegbu and Dr. Krishnamurthy's RFC recommendations—neither of which included a light-exposure limitation—noting that both doctors recommended only "avoiding concentrated exposure to noise and hazards" as necessary environmental limitations. R. 33. The ALJ stated that she found these recommendations "moderately persuasive" (R. 33) and ultimately included limitations in noise and hazard exposure in her RFC (R. 27). And, the ALJ acknowledged a medical record documenting that Plaintiff had "about 2-3 headaches weekly with phonophobia and mild photophobia." R. 29. But this record and others suggest that "photophobia" (i.e., sensitivity to light), was documented as a *symptom*, not a trigger, of the migraines.

---

[7] Further, to the extent the ALJ's discussion of the Plaintiff's testimony about absenteeism was cursory, the Court notes that Plaintiff at least partially accounted for his own past absenteeism from work by explaining that he had to attend medical appointments during work hours. *See* R. 65 (Plaintiff explaining that he missed work because "sometimes I have three appointments a week. Sometimes I even have three appointments in a day."). However, a recent Eleventh Circuit decision explicitly held that an ALJ should not consider a claimant's alleged work-related limitations that result from attending medical appointments. *See Malak*,131 F.4th at 1287 (11th Cir. 2025) ("We hold that a claimant's medical appointments and whether those appointments affect the claimant's ability to work are not appropriate factors for the ALJ to consider when addressing the claimant's RFC.")

But, the ALJ did not acknowledge Plaintiff's claim that light triggered his migraines. During the hearing before the ALJ, Plaintiff's attorney asked, "Are there any things that trigger your migraines?" to which Plaintiff responded: "Like light, sound sometimes, sometimes strong odor." R. 63. This was consistent with Plaintiff's 2021 answers to a "Headache Questionnaire" in which he identified "light" as a "cause" of his headaches. R. 434.

The ALJ's broad statement that that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 28) might suggest she discounted Plaintiff's claim that light triggered his migraines. However, because she did not mention this claim specifically, this Court cannot be certain whether the ALJ considered Plaintiff's allegation or whether she made a credibility finding on that issue. Thus, remand is necessary to allow the ALJ to explain her basis for omitting a light limitation from Plaintiff's RFC.

d. <u>There is no apparent conflict between the ALJ's limitation findings and the VE's testimony.</u>

In his fourth and final argument, Plaintiff claims that the ALJ failed to resolve the conflict between the ALJ's finding that Plaintiff was limited to carrying out simple and repetitive tasks and the VE's assertion that Plaintiff could perform jobs requiring level two reasoning. Doc. 23 pp. 11-14.

If an ALJ determines at Step Four that the claimant cannot perform his past relevant work, the Commissioner has the burden "to show the existence of . . . jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Hale*, 831 F.2d at 1011. An ALJ may meet this burden by posing a hypothetical question to a vocational expert "which comprises all of the claimant's impairments" and then relying on the expert's testimony that a claimant is eligible for a significant number of jobs in the national economy. *Winschel*, 631 F.3d at 1180.

In some instances, the VE's testimony may be inconsistent with the DOT. In 2000, the Social Security Administration (SSA) promulgated SSR 00-4p "to clarify [the] standards [in 20 C.F.R. § 416.966] for identifying and resolving . . . conflicts" between a VE's testimony and the data in the DOT. SSR 00-4p.[8] In relevant part, the SSA explained:

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain

---

[8] To the extent an ALJ's failure to follow SSR 00-4p could prejudice a claimant, this Ruling is binding within the Social Security Administration. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1361 (11th Cir. 2018) ("We require the agency to follow its regulations where failure to enforce such regulations would adversely affect substantive rights of individuals." (citations and internal quotations omitted)).

the resolution of the conflict irrespective of how the conflict was identified.[9]

*Id.*

Interpreting SSR 004-p, the Eleventh Circuit has held that "the ALJ has an affirmative obligation to identify any 'apparent' conflict" between the DOT and a VE's testimony, "and to resolve it." *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). "Specifically, the ALJ must: (1) identify any 'apparent' conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved." *Buckwalter v. Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (2021) (citing *Washington*, 906 F.3d at 1362). The circuit court further clarified that "apparent" means "reasonably ascertainable or evident," from the point of view of "an ALJ who has ready access to and a close familiarity with the DOT." *Washington*, 906 F.3d at 1366.

Here, the ALJ asked the VE about the job opportunities for a hypothetical person who had certain limitations that included being able to "understand and remember [(only)] simple and detailed instructions, and

---

[9] This Ruling has now been rescinded and replaced by SSR 24-3p. However, SSR 24-3p went into effect on January 6, 2025, and applies only to claims that were pending before the Commission on that date. Plaintiff's claim was decided before that date and, therefore, SSR 00-4p applies to his claim.

complete [(only)] simple, routine, repetitive tasks." R. 73. In response to the hypothetical, the VE testified that the person could perform three jobs available in substantial numbers in the national economy: routing clerk, retail marker, and office helper. R. 73-74.

Plaintiff points out that each of these three jobs has a "Reasoning Level 2," meaning that they involve "carry[ing] out *detailed* but uninvolved written [or] oral instructions." Doc. 23 p. 12 (citing printouts of DOT descriptions of the three jobs at R. 624, 629, 632) (emphasis added). Plaintiff explains that, while the ALJ's hypothetical stated that Plaintiff could *understand* "simple and detailed instructions," it limited plaintiff to *completing* only "simple, routine, repetitive tasks." Doc. 23 p. 12. Plaintiff argues that, the VE's answer thus contained an apparent conflict that the ALJ was required to, but failed to, identify and resolve. Doc. 23 pp. 13-14.

Plaintiff is incorrect that the VE's testimony (that someone who can complete only "simple, routine, repetitive tasks" could perform the identified jobs) conflicted with the DOT (defining the jobs as requiring level two reasoning and thus requiring a worker to "carry out detailed but uninvolved written [or] oral instructions"). As Defendant rightly notes (Doc. 26 p. 13), a recent Eleventh Circuit case addressed this very question and concluded that there was no apparent conflict. *See Buckwalter*, 5 F.4th 1315 (11th Cir. 2021).

In *Buckwalter*, a DIB claimant appealed an ALJ's no-disability decision, arguing that an RFC limiting her to understanding and carrying out simple instructions was inconsistent with the ALJ's finding (which relied on the VE's testimony) that she could perform jobs with level two reasoning. *Id.* at 1322. That claimant, like Plaintiff here, argued that the ALJ's failure to identify and resolve the conflict between the VE's testimony and the DOT constituted reversible error. *Id.* at 1322. Rejecting the claimant's argument, the Eleventh Circuit held that there was no apparent conflict in a VE's testimony that someone limited to understanding and carrying out simple instructions could perform jobs requiring level two reasoning, even though such jobs are described by the DOT as involving carrying out "detailed but uninvolved written or oral instructions." *Id.* at 1323. "Although there is potentially tension between [the claimant's] limitations to simple instructions and reasoning level two," *Buckwalter* explains, "that tension does not rise to the level of an 'apparent' conflict as we have defined it." *Id.* (citing *Washington*, 906 F.3d at 1366). *Buckwalter* is dispositive here.[10]

---

[10] The Court notes that the Eleventh Circuit's description of the claimant's RFC in *Buckwalter* only stated that she was limited to carrying out "simple instructions," *id.*, while Plaintiff's RFC further specifies that he can only carry out "simple, *routine, repetitive* tasks." R. 73 (emphasis added). However, in explaining its holding, the court in *Buckwalter* quoted with approval two Eighth and Fourth Circuit cases which had reached the same conclusion when considering claimants with RFCs that limited them to

Attempting to distinguish *Buckwalter*, Plaintiff emphasizes that the ALJ in this case specifically noted that he could *understand* detailed instructions, but only carry out simple tasks, whereas for the claimant in *Buckwalter*, "the adjective 'detailed' was not part of the RFC" at all. Doc 27 p. 5. Plaintiff suggests that, because "the ALJ specifically used the term 'detailed' in one part of the RFC and excluded it in another" the ALJ in this case must have affirmatively rejected the possibility that Plaintiff could carry out detailed tasks. *Id.* But Plaintiff's efforts to differentiate *Buckwalter* are unconvincing.

*Buckwalter*'s holding rested largely on a conclusion that, based on the definitions of the words and their use in the DOT scheme, "'simple' does not plainly contradict 'detailed.'" *See* 5 F.4th at 1323. Thus, *Buckwalter* held that work tasks involving level two reasoning may often be simultaneously simple *and* detailed. With this nuance in mind, Plaintiff's cursory assertion that the ALJ somehow meant to affirmatively exclude all tasks considered "detailed" cannot prevail. Because *Buckwalter*'s controlling precedent cannot be

---

"performing simple, routine, and repetitive work activity," and "simple, routine repetitive tasks of unskilled work," respectively. *See* 5 F.4th at 1323-24 (quoting *Moore v. Astrue*, 623 F.3d at 604-05 (8th Cir. 2010) and *Lawrence v. Saul*, 941 F.3d 140 at 143-44 (4th Cir. 2019)). The Eleventh Circuit endorsed those cases' holdings, describing the *Buckwalter* claimant's limitations as "similar to the limitations at issue in *Lawrence* and *Moore*." *See id.* at 1324. Thus, the *Buckwalter* holding naturally extends to the slight variation in Plaintiff's RFC in this case.

meaningfully distinguished from the facts of this case, Plaintiff's final appellate argument does not persuade.[11]

---

[11] Additionally, even were the Court to conclude that there was an apparent conflict here, it was likely identified and resolved in accordance with *Washington*'s requirements. At the end of the VE's testimony, the ALJ asked the VE whether his testimony had been consistent with the DOT. R. 74. The VE responded:

> It has been, Your Honor, in the areas addressed by the [DOT]. And in those areas not addressed, such as the frequency of change, *definition of unskilled and simple. . .* that is based on my education, training and 35 years of experience. . .

R. 74 (emphasis added). Then, in the ALJ's decision, after relying on the VE's job testimony, the ALJ explicitly stated that she had determined that his testimony was consistent with the DOT "except the DOT does not address . . . the definition of unskilled simple, such testimony is based on the [VE]'s education, training, and 35 years' experience." R. 34. Thus, the VE identified an area of potential dissonance between the DOT use of "simple" and his testimony, and the ALJ explained that potential conflict and how it was resolved in her decision. *See Washington*, 906 F.3d at 1362 (explaining the requirements for identifying and resolving an apparent conflict). So, even if *Buckwalter* did not apply here, and Plaintiff was correct that the conflict was apparent, the ALJ and VE together adequately identified and resolved the conflict.

## IV.   Conclusion

Because (1) aspects of Plaintiff's RFC were omitted from the hypothetical question to the VE, whose testimony the ALJ conclusively relied on for her no-disability finding, and (2) it is unclear the basis on which the ALJ  omitted light limitations from Plaintiff's RFC, remand is appropriate. Accordingly,

(1)   The decision of the Commissioner is REVERSED and this case REMANDED to the Commissioner for further administrative proceedings consistent with the reasons stated in this order.

(2)   The Clerk of Court shall enter judgment in the Plaintiff's favor, terminate any pending motions, and close the case.

ORDERED on March 30, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge